STATE *ex rel. v.* ALLEN *et al.*

(*Knoxville,* September Term, 1940.)

Opinion filed December 18, 1940.

W. O. LOWE, NORMAN B. MORRELL, ALLEN ELLIOTT, HARRY S. HYMAN, and GALE R. WEEMS, all of Knoxville, for appellants.

ROY H. BEELER, Attorney-General, and JAS. G. JOHNSON, HAROLD WIMBERLY, W. W. KENNERLY, and CHARLES G. KELLY, all of Knoxville, for appellees.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

A petition was filed herein by several delinquent tax attorneys for a rehearing, or revisal of decree entered, in the above styled case. The petition recites that it is filed in behalf of the said attorneys and on behalf of the

672

State of Tennessee and County of Knox. The chancellor dismissed the petition and the petitioners appealed.

Having been duly selected to act as such, respectively, for 1937 and several years prior thereto, petitioners, as delinquent tax attorneys, had filed bills to collect State and County taxes for the several years due and unpaid on real estate in Knoxville belonging to one Buchanan. Attorneys for the City of Knoxville had filed similar bills for certain of these years to collect city taxes due on the same property.

All these suits were pending when proceedings under chapter 126 of the Acts of 1939 were had by the Trustee of Knox County and the Director of Finance of the City of Knoxville acting as a statutory board on Buchanan's petition. They found Buchanan's real estate was subject to tax liens in excess of the amount for which the property could be sold to a private purchaser at a tax sale and therefore ''insolvent property.'' Accordingly, as the statute authorizes, the board accepted from Buchanan in settlement of the tax liens a sum of money comparable to their appraisal of the value of the property.

This sum of money was apportioned by the board among the State of Tennessee, Knox County, and the City of Knoxville without any provision for the fees of petitioners.

In section 5 of chapter 126 of the Acts of 1939 it is provided: ''In all settlements involving liens on which suits have been filed, it shall be necessary that the said settlements shall be approved by the Court in which said suits are pending before said settlements are final.'' The matter was presented to the chancellor at the instance of the board and he approved the settlement and appointment made by them. It is to modify this decree that petitioners came into court.

█ In so far as petitioners assert a right to further represent the State and County in these matters, we think their authority has been superseded. The "Board for the Settlement of Liens on Insolvent Property" orzanized as aforesaid, is given full authority by chapter 126 of the Acts of 1939 in the premises, subject only to the approval of the court in respect to settlements involving liens on which suits have been filed. If the board, or the County or City, chooses to have the matter presented to the court through other attorneys, we think the petitioners have no ground for complaint. Petitioners were employed to collect these taxes. When a paramount authority created by the Legislature settled the tax claims nothing remained for petitioners to do.

█ However, we think that petitioners did have the right to appear in this cause in their own interest to set up their claim for attorneys' fees provided for them by statute, which fees accrued when they filed the tax bills.

The tax bills herein were filed by petitioners under Code, sections 1590, 1591, chapter 114 of the Acts of 1935, and chapter 71 of the Acts of 1937. These statutes provide for fees for tax attorneys, describe such fees as additional penalties, further describe the fees as part of the taxes, and expressly declare all penalties a lien upon the land. As just above noted under the statutes, the fees accrue when the bills are filed.

█ We find nothing in chapter 126 of the Acts of 1939 to justify disregard of claims of the tax attorneys in the distribution of the proceeds of a settlement made under that Act. The Act is entitled "An Act to authorize cities and counties to cooperate in the settlement of tax liens . . ." Several sections provide in so many words for the settlement of tax liens and for the manner

of settlement of tax liens, and by the statutes referred to, the fees of the tax attorneys are made part of the taxes and a lien declared for the whole.

It is true that section 6 of the Act provides for the application of the money received in settlement to State taxes, County taxes, and municipal taxes, and directs the manner of allocation. But on the filing of a tax bill the attorney's fee accrued and became part of the taxes, covered by liens which the compromise settlement is designed to discharge.

The manner of disbursing the money received in settlement with Buchanan is sought to be justified on the ground that chapter 50 of the Act of 1939, known generally as the Moratorium Act, relieved delinquent taxpayers of interest and penalties if they paid the original taxes assessed against them by January 1, 1940. It is said that this Act deprived the tax attorneys representing the State and County of their fees, such fees as heretofore appears being regarded as additional penalties.

By its very terms, chapter 50 of the Acts of 1939 can have no reference to a compromise settlement made with respect to insolvent property under chapter 126 of the Acts of 1939. Chapter 50 contemplates payment by the taxpayer of the full amount of the original tax. This appears all through the Act. He is to be relieved of interest and penalties when the original tax is paid within the time prescribed. Chapter 50 does not remit interest and penalties upon payment of a part of the original tax.

Section 5-A of chapter 50 of the Acts of 1939 excepted, or authorized municipal corporations to except, taxes due such municipal corporations from the provisions of the Act. The City of Knoxville took advantage of this

exception. Accordingly, in making the allocation of the money received in settlement of Buchanan's taxes, the board figured the amount due the State and County without interest and penalties. It figured the amount due the City with interest and penalties added.

Section 6 of chapter 126 of the Acts of 1939 relating to the distribution of the proceeds of the compromise, after providing for the State, says:

"(2) County and municipal taxes beginning with the oldest year's taxes which are secured by an existing lien against the property and proceeding successively to the taxes which have become delinquent most recently. If the money available is sufficient to pay part but not all of the county and municipal taxes for any one year, the money shall be divided between the county and the municipality in proportion to the amount of their delinquent taxes for that year."

It is obvious, therefore, that the deduction of interest and penalties from State and County taxes and the inclusion of interest and penalties in the City taxes, when distribution was made, was an unauthorized discrimination in favor of the City. This is so because, as just seen, interest and penalties on State and County taxes are not to be ignored when a settlement is made under chapter 126 of the Acts of 1939.

The tax attorneys complain because of the manner of distribution of this fund between the County and the City. It is insisted that the County should have priority under earlier statutes, but we think the County's priority is abolished by subdivision (2) of section 6 of chapter 126 of the Acts of 1939 above quoted.

Upon the whole case, we are of opinion that the petitioners are entitled to their fees, calculated on the statutory percentages of so much of the money received in

the compromise settlement as was allocated to the State and County. This allocation should be made on the basis we have indicated, the State, under the statute, being entitled to priority, unless that priority is waived, as provided by subdivision (1) of section 6 of chapter 126 of the Acts of 1939.

The cause will be remanded for further proceedings in accordance herewith.